UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CANDICE MARIE GRIESMAR, | Case No. 5:20-cv-01356 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| CITY OF STOW, OHIO, *et al.*, | |
| Defendants. | |

# OPINION AND ORDER

Plaintiff Candice Marie Griesmar filed suit in State court alleging that Defendants City of Stow, Officer J. Bailey, and Lieutenant H. Prusha violated her rights and those of a putative class under the federal and Ohio Constitutions. ([ECF No. 1-2](#).) Defendants timely removed based on federal question jurisdiction because Plaintiff included a claim under Section 1983 in Count I and a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in Count II. ([ECF No. 1](#).) Plaintiff and Defendants each move for summary judgment on the threshold federal claim. ([ECF No. 24](#); [ECF No. 26](#).) For the reasons that follow, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendants' motion. Because this disposition resolves the claims over which the Court has original jurisdiction, the Court declines to exercise supplemental discretion and **REMANDS** the remaining claims to State court.

STATEMENT OF FACTS

This case arises out of a traffic stop officers from the Stow, Ohio police department conducted early on the morning of May 30, 2019. (ECF No. 1-2, ¶ 19, PageID #10; ECF No. 5, ¶ 16, PageID # 37.) As a result of the traffic stop, Ms. Griesmar was cited for speeding, subjected to a search of her vehicle, and ultimately arrested and charged with felony and misdemeanor drug charges. (ECF No. 1-2, ¶ 19–21, PageID #10; ECF No. 5, ¶ 16, PageID # 37.)

    A.    **The Traffic Stop**

While on patrol, Officer Bailey observed a vehicle traveling over 50 miles per hour in a 35 miles per hour zone. (ECF No. 21, PageID #203, 273.) The radar system in Officer Bailey's cruiser showed that the vehicle was traveling at 56 miles per hour. (*Id.*, PageID #202, 273.) At approximately 12:58 a.m., Officer Bailey pulled the vehicle over and questioned the driver, Ms. Griesmar, who stated she was not aware of her speed or of the speed limit. (*Id.*, PageID #273; ECF No. 1-2, ¶ 19, PageID # 10; ECF No. 5, ¶ 16, PageID # 37.) During this conversation, Officer Bailey smelled "a slight odor of marijuana," but did not mention it to Ms. Griesmar. (ECF No. 21, PageID #221.) Officer Bailey returned to his cruiser to write a citation for speeding. (*Id.*, PageID #273.)

    B.    **The Vehicle Search**

After returning to Ms. Griesmar's vehicle and serving the citation, Officer Bailey asked to search the vehicle because he "continually smelled a light odor of marijuana coming from her vehicle." (ECF No. 1-2, ¶ 23–24, PageID # 10; ECF No. 5, ¶ 18, PageID # 37.) Officer Bailey asked for Ms. Griesmar's consent to search the

vehicle and Ms. Griesmar replied that she "just wanted to go home." (ECF No. 1-2, ¶ 24, PageID # 10; ECF No. 5, ¶ 18, PageID # 37.) Officer Bailey told Ms. Griesmar that "due to the odor or marijuana it was actually not an option and that [he] was going to search her vehicle." (ECF No. 1-2, ¶ 24, PageID # 10; ECF No. 5, ¶ 18, PageID # 37.) Ms. Griesmar told Officer Bailey that the smell was emanating from marijuana roaches in her ashtray, which she showed to him. (ECF No. 20, PageID #134–135; ECF No. 21, PageID #273.)

At that point, Officer Bailey asked Ms. Griesmar to exit the vehicle and advised dispatch that he was conducting a vehicle search. (ECF No. 21, PageID #273.) In response to Officer Bailey's call to dispatch, Lieutenant Prusha came to the scene to provide back up for the vehicle search. (ECF No. 21, PageID #273; ECF No. 22, PageID #306–07.) Lieutenant Prusha arrived after Ms. Griesmar had exited the vehicle. (ECF No. 20, PageID #136; ECF No. 22, PageID #307.)

During the search of Ms. Griesmar's vehicle, Officer Bailey discovered a two-and-a-half-inch section of a straw, two plastic bags containing a total of ten pills, and a folded receipt containing an unidentifiable white pill. (ECF No. 21, PageID #273.) Officer Bailey identified the section of straw as consistent with what is often used for snorting drugs. (ECF No. 21, PageID #274.) Further, because of the way the pills were stored in plastic bags, Office Bailey surmised they were illegal. (ECF No. 21, PageID #236.) Using a database she accessed from her cell phone, Lieutenant Prusha identified the pills that Officer Bailey had discovered as oxycodone hydrochloride and cyclobenzaprine hydrochloride. (ECF No. 21, PageID #235–36, 273; ECF No. 22,

3

PageID #315–16, 333–34.)  On finding and identifying the pills, Officer Bailey gave Ms. Griesmar her *Miranda* warning and questioned her.  (ECF No. 20, PageID #138; ECF No. 21, PageID #273.)  Ms. Griesmar claimed that the pills were prescribed.  (ECF No. 20, PageID #139; ECF No. 21, PageID #273.)  However, Ms. Griesmar could not produce the prescriptions or remember their names.  (ECF No. 20, PageID #144, 167–68; ECF No. 21, PageID #273.)

### C. Ms. Griesmar's Arrest

Subsequently, Office Bailey placed Ms. Griesmar under arrest and transported her to the jail.  (ECF No. 21, PageID #273; ECF No. 22, PageID #333.)  Lieutenant Prusha accompanied Officer Bailey to the jail to assist him with the booking.  (ECF No. 21, PageID #273.)

Ms. Griesmar was booked at the Macedonia jail at 3:36 a.m.  (ECF No. 23-6, PageID #483.)  Later that morning, at 10:00 a.m., a municipal court judge arraigned Ms. Griesmar by video on all charges.  (ECF No. 20, PageID #161–62; ECF No. 23-6, PageID #484; ECF No. 23-5, PageID #445.)  The same day, around 3:00 p.m., Ms. Griesmar was released from jail on a personal recognizance bond.  (ECF No. 20, PageID #166, 187; ECF No. 23-6, PageID #23-6, PageID #481.)  The municipal court notified Ms. Griesmar that she had to appear for a hearing on June 6, 2019.  (ECF No. 20, PageID #164–65, 188.)

Ms. Griesmar was charged with felony and misdemeanor drug charges. (ECF No. 1-2, ¶ 20, PageID #10; ECF No. 5, ¶ 16, PageID #37; ECF No. 23-5, PageID

#439–74.) Ultimately, a fifth-degree felony drug charge against Ms. Griesmar was dismissed. (ECF No. 1-2, PageID #18–19.)

## STATEMENT OF THE CASE

Based on these facts, Plaintiff filed suit in State court and brought two federal claims against Defendants. (ECF No. 1-2.) Defendants timely removed. (ECF No. 1.) In Count I, Plaintiff asserts, under 42 U.S.C. § 1983, that the Defendant officers unlawfully detained her and seized her property. (ECF No. 1-2, ¶ 18–35, PageID #10–12.) Plaintiff also claims that a "class of others have been arrested without a warrant" and "without prompt determinations of probable cause." (*Id.* ¶ 35, PageID #12.) In Count II, Plaintiff alleges that the City's "failure to maintain and enforce proper training or policies and procedures" violated her federal constitutional rights. (*Id.*, ¶ 37, PageID #12.) Plaintiff also brings claims under State law. (*Id.*, ¶ 40–46, PageID # 12–13.)

The parties agreed to address the underlying federal constitutional claims first. (ECF No. 15.) Accordingly, both Defendants and Plaintiff move for summary judgment on Count I, which asserts a violation of Section 1983. (ECF No. 24; ECF No. 26.) In addition, Defendants move for summary judgment on Count II on the ground that if Plaintiff's claim against the Defendant officers in Count I fails, then Plaintiff's *Monell* claim against the City of Stow in Count II necessarily fails as well. (ECF No. 24-1, PageID # 499–500.)

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to

5

any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.* However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly

6

supported motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## I. Section 1983 Claim (Count I)

Plaintiff argues that Officer Bailey and Lieutenant Prusha subjected her to a warrantless arrest without providing a prompt determination of probable cause by a neutral and detached magistrate. (ECF No. 26-1, PageID #520.) She alleges that the officers violated her rights under the Fourth and Fourteenth Amendments. (ECF No. 1-2, ¶ 32, PageID #11.)

### I.A. The Constitutional Right at Issue

Section 1983 provides a federal remedy for State violations of rights secured under the Constitution or federal law. *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1160 (6th Cir. 2021). In this respect, the statute does not create substantive rights, but provides a means of redress. *Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1160 (6th Cir. 2021). Whether a defendant has violated a constitutional right turns on the meaning of the constitutional text; therefore, the

7

"threshold inquiry" under Section 1983 is to identify the specific constitutional right at issue. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017).

Plaintiff's claims arise out of a traffic stop that State officers initiated and her subsequent arrest and detention. The Fourth Amendment, which protects an individual's right against warrantless searches and seizures, squarely applies to this situation. *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) (Fourth Amendment, not substantive due process, applies to claims arising out of pretrial deprivations of liberty); *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006) (applying Fourth Amendment jurisprudence to claim of continued detention without probable cause); *Northrup v. City of Toledo Police Div.*, 58 F. Supp. 3d 842, 846 (N.D. Ohio 2014), *aff'd in relevant part Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128 (6th Cir. 2015) (applying the Fourth Amendment to unlawful seizure allegation).

Nonetheless, Plaintiff contends that the Fourteenth Amendment also applies to her claims. Plaintiff argues that Ohio law requires a determination of probable cause "forthwith" by issuing a warrant and that "the State's failure to implement its rights may violate federal due process." (ECF No. 30-1, PageID # 549–550.) However, Plaintiff fails to develop this argument. Plaintiff does not explain how Defendants' actions violated Ohio law or. if a violation occurred, how that violation deprived Plaintiff of her rights under the Fourteenth Amendment. Accordingly, and consistent with clear precedent applying Fourth Amendment jurisprudence to similar claims, the Court analyzes Plaintiff's claims under governing principles under the Fourth Amendment.

8

### I.B. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Jones*, 565 U.S. 400, 404 (2012). Warrantless searches and seizures are presumptively unreasonable, subject to a "few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Plaintiff's complaint alleges Fourth Amendment violations regarding the initial stop, the search of her vehicle, and her subsequent arrest and detention.

### I.B.1. The Traffic Stop

"A police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred." *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008). According to Officer Bailey's contemporaneous report and his later testimony, Officer Bailey observed Ms. Griesmar's car traveling over 50 miles per hour in a zone with a 35 miles per hour speed limit. (ECF No. 21, PageID #202–03, 273.) His claim is based on his personal observation and the radar reading showing that the vehicle was traveling at 56 miles per hour. (*Id.*) Plaintiff contests Officer Bailey's claim that Ms. Griesmar was speeding because it was "never adversarial[ly] tested." (ECF No. 30-1, PageID #546.) But considering Defendants' evidence that Ms. Griesmar was speeding, Plaintiff must do more than show there is some "metaphysical doubt" about that fact. Plaintiff sets forth no facts showing that Ms. Griesmar's speeding is a genuine issue of material fact in dispute. Accordingly,

9

the Court determines that Officer Bailey had probable cause to stop Ms. Griesmar for speeding, a civil infraction.

Further, Plaintiff argues that Officer Bailey did not have the reasonable suspicion necessary to justify prolonging the traffic stop after serving the traffic citation. (ECF No. 30-1, PageID #545–46.) "Once the purpose of the traffic stop is completed, a police officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Torres-Ramos*, 536 F.3d at 550 (cleaned up). In other words, to detain Ms. Griesmar beyond the purpose of the original traffic violation, which was to issue a speeding ticket, Officer Bailey must have had a "reasonable and articulable suspicion that criminal activity was afoot." *Id.* As discussed below, Officer Bailey's detection of the smell of marijuana provided probable cause for the search of Ms. Griesmar's vehicle. Such probable cause satisfied the reasonable suspicion requirement for continued detention. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (reasonable suspicion standard is lower than probable cause).

### I.B.2. The Search of Ms. Griesmar's Vehicle

Warrantless searches of vehicles "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz*, 389 U.S. at 357). One such exception permits an officer to search a vehicle without a warrant if probable cause supports the search. *United States v. Ross*, 456 U.S. 798, 809 (1982).

10

Probable cause means reasonable grounds for belief the vehicle contains evidence of a crime, supported by less than prima facie proof but more than mere suspicion. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Put another way, probable cause exists where "there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In determining whether probable cause exists, the Court does not look to events before or after the search or the subjective intent of the officers; instead, the Court considers the objective facts known to the officers at the time of the search. *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1994).

Officer Bailey detected the smell of marijuana on first encountering Ms. Griesmar in her vehicle and on returning to her vehicle to issue the speeding citation. (ECF No. 1-2, ¶ 23–24, PageID # 10; ECF No. 5, ¶ 18, PageID # 37; ECF No. 21, PageID #221.) The Sixth Circuit has consistently held that a police officer's detection of the smell of marijuana may provide probable cause to search a vehicle after a routine traffic stop. *United States v. Carter*, No. 1:14-cr-194-1, 2015 WL 13037479, at *4 (N.D. Ohio Jan. 26, 2015), *aff'd*, 662 F. App'x 342 (6th Cir. 2016) (collecting cases). Where such probable cause exists, an officer may search any area of the vehicle in which contraband or evidence of the criminal activity may be found. *Gant*, 556 U.S. at 347. Further, Ms. Griesmar informed Officer Bailey there were marijuana roaches in the car and showed them to him before he conducted the search.

11

(ECF No. 20, PageID #134–135; ECF No. 21, PageID #273.) Accordingly, Officer Bailey had probable cause to conduct a warrantless search of her vehicle.

### I.B.3. Ms. Griesmar's Arrest

The test for whether an arrest is constitutionally valid is "whether, at the moment the arrest was made, the officers had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). A warrantless arrest does not violate the Fourth Amendment where there is probable cause. *United States v. Dotson*, 49 F.3d 227, 230 (6th Cir. 1995). In searching Ms. Griesmar's vehicle, Officer Bailey discovered, in addition to the marijuana roaches, a section of straw consistent with drug use and pills contained in plastic bags. (ECF No. 21, PageID #273.) Lieutenant Prusha identified the pills as controlled substances. (ECF No. 21, PageID #235–36, 273; ECF No. 22, PageID #315–16, 333–34.) These facts are sufficient to establish probable cause for Ms. Griesmar's arrest. To the extent Plaintiff contends Ms. Griesmar's arrest was unlawful, Plaintiff fails to advance any argument on that point.

### I.B.4. Ms. Griesmar's Detention

In the case of a warrantless arrest, an officer's assessment of probable cause provides legal justification for the arrest and brief detention of a person suspected of a crime. *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975). Once a suspect is in custody, however, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id*. at 114. An adversarial hearing is not required, *id*. at 120-21, nor is there a single preferred pretrial procedure, *id*. at 123. Rather, whatever procedure a State adopts, "it must

12

provide a fair and reliable determination of probable cause [to arrest] as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125. "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

Plaintiff contends that Ms. Griesmar never received a judicial determination of probable cause. (ECF No. 26-1, PageID #519; ECF No. 30-1, PageID #540.) Defendants maintain that she did. (ECF No. 33, PageID #561.) The record shows that, after Ms. Griesmar's initial detention (at 12:58 a.m.) a municipal court judge arraigned her the same day, at 10:00 a.m., and determined that probable cause existed for her arrest and prosecution. (ECF No. 23-5, PageID #445.) The judge's order stated: "The court having reviewed the notarized affidavit in the case file finds probable cause to continue for preliminary hearing or felony status." (*Id.*) Plaintiff quibbles that the form states only a finding of probable cause "*for preliminary hearing or status*" (ECF No. 30-1, PageID #540 (emphasis added)), not a finding of probable cause for a felony or misdemeanor arrest. Though the State form may be unartfully drafted or leave something to be desired, the proceeding before a State court judge satisfied Ms. Griesmar's federal constitutional right to a prompt determination of probable cause before a neutral magistrate. Defendants have shown that Ms. Griesmar was in fact arraigned on the charges on the same morning as her arrest. Plaintiff presents no facts showing that there is a genuine dispute over this matter.

13

Further, Plaintiff argues that Ms. Griesmar was detained for an unreasonable amount of time. (ECF No. 24, PageID #520; ECF No. 30-1, PageID #541.) From Ms. Griesmar's initial detention at 12:58 a.m. to her arraignment at 10:00 a.m., Ms. Griesmar was detained for approximately nine hours. (ECF No. 30-1, PageID #541.) From the initial detention to Ms. Griesmar's ultimate release from custody at 3:08 p.m., she was detained for less than fifteen hours all together. (ECF No. 30-1, PageID #541.) Defendants argue that, under *McLaughlin*, the Fourth Amendment is satisfied if an individual receives a judicial determination of probable cause within 48 hours of her arrest. (ECF No. 33, PageID #563.) In response, Plaintiff contends that, even if the detention is less than 48 hours, there might still be a violation under *McLaughlin*. (ECF No. 30-1, PageID #548.) Plaintiff argues that this case is part of a "subtle, systemic practice of hours of needless delay" arising from particular State practices. (*Id.*, PageID #548–49.)

Under *McLaughlin*, detention lasting less than 48 hours might violate the Fourth Amendment. 500 U.S. at 56 ("This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours."). Under *McLaughlin*, a jurisdiction that provides a judicial probable cause determination within 48 hours complies with the promptness requirement of *Gerstein* and "will be immune from systemic challenges." *Id.* Accordingly, Plaintiff's systemic challenge cannot proceed. Further, under *McLaughlin*, a particular plaintiff challenging the promptness of a determination made within 48 hours of arrest must "prove that his or her probable cause

14

determination was delayed unreasonably." *Id.* "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.* Here, Plaintiff did not allege that her probable cause determination was unreasonably delayed for improper purposes.

Even if Ms. Griesmar never received a proper probable cause determination, as Plaintiff contends (ECF No. 30-1, PageID #540), Plaintiff still fails to show that fifteen hours was an unreasonable amount of time for detention following arrest. Under *Gerstein*, an officer's probable cause determination justifies a warrantless arrest and a brief period of detention. *Gerstein*, 420 U.S. at 113–14. That detention may not then be extended without a prompt judicial determination that there is probable cause to arrest. *Id.* Plaintiff's detention, at most fifteen hours long, ended within a constitutionally reasonable period of time, even without a judicial determination of probable cause. *See Cox v. City of Jackson, Tennessee*, 811 F. App'x 284, 287 (6th Cir. 2020) (one-day detentions without a judicial determination of probable cause did not give rise to a Fourth Amendment claim). Accordingly, the length of detention did not violate Ms. Griesmar's Fourth Amendment rights.

Finally, Plaintiff argues that the probable cause determination should have been made at the police station before booking Ms. Griesmar in the local jail. (ECF No. 30-1, PageID #541.) But the Court will not second-guess the State's course of action where it resulted in no constitutional violation.

15

### I.C. Qualified Immunity

Defendants argue that Officer Bailey and Lieutenant Prusha are entitled to qualified immunity against Plaintiff's claims. Because the Court determines that neither Officer Bailey nor Lieutenant Prusha committed a constitutional violation, the Court need not address qualified immunity.

### II. *Monell* Claim (Count II)

In addition to her Section 1983 claims against Officer Bailey and Lieutenant Prusha, Plaintiff brings a *Monell* claim against the City of Stow for its alleged inadequate training and supervision. (ECF No. 1-2, ¶¶ 36–37, PageID # 12.) Defendants argue that, without an underlying constitutional deprivation committed by Officer Bailey or Lieutenant Prusha, Plaintiff cannot prevail on the *Monell* claim. (ECF No. 24-1, PageID # 499.) Plaintiff objects, on the ground that Defendants' argument violates the parties' prior agreement to brief the alleged constitutional violation in Count I and defer other issues. (ECF No. 30-1, PageID #538; *see also* ECF No. 15, PageID #98.)

Before these early summary-judgment proceedings, the parties agreed that the Court would first address the Section 1983 claims against Officer Bailey and Lieutenant Prusha contained in Count I. (ECF No. 15.) Further, they agreed that the *Monell* claim against the City of Stow contained in Count II "is bifurcated from the initial Dispositive Motion process and will be addressed by the court, if necessary, upon further order of the court." (*Id.*) Consistent with this agreement, the parties agreed not to conduct discovery on Count II until further order of the Court. (*Id.*)

16

After the parties reached this agreement, the Court advised that it would consider the related *Monell* claim to the extent appropriate in connection with the federal constitutional issues raised in Count I. (Minutes, Aug. 6, 2021.) That is, if Plaintiff were entitled to a judgment as a matter of law or questions of fact foreclosed judgment as a matter of law, then the *Monell* claim would remain for further proceedings. However, because Defendants argue the City of Stow is entitled to judgment as a matter of law, not a matter of fact, the Court determines that neither discovery nor additional briefing is necessary to render judgment on the *Monell* claim, and such an outcome is consistent with the parties' agreement and discussions with the Court.

*Monell* holds that municipalities may be held liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation. *Monell*, 436 U.S. at 694–95. "There can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). The "conclusion that no officer-defendant has deprived the plaintiff of any constitutional right *a fortiori* defeats a claim against the government entity as well." *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799)) (cleaned up). In this case, because no employee of the City of Stow violated any of Plaintiff's federal constitutional rights, the City of Stow, Plaintiff may not maintain a claim against the City of Stow. Given the Court's disposition of Count I, no further federal proceedings no matter how extensive or involved—as a matter of fact or law—can alter this outcome.

### III. Supplemental Jurisdiction

Having disposed of the only bases for subject-matter jurisdiction in federal court, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining State-law claims. Pursuant to 28 U.S.C. § 1367(c)(3), this Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." Because comity to State courts is a substantial interest, there is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x. 580, 584 (6th Cir. 2011). The Court should retain jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh [the] concern over needlessly deciding state law issues." *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

The discretion to decline supplemental jurisdiction over state-law claims extends to all stages of litigation, including summary judgment. *See Booker v. City of Beachwood*, 451 F. App'x. 521, 523 (6th Cir. 2011) (citing *Nails v. Riggs*, 195 F. App'x. 303, 313 (6th Cir. 2006)). In exercising that discretion, the Court may consider the convenience to the parties and expeditiousness in resolving the case. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). Here, the parties have not exerted substantial time or effort in briefing the merits of the state law causes of action; instead, the parties addressed only the federal constitutional issues and arguments. Accordingly, comity and the interest in judicial economy favor remand of

18

Plaintiff's State-law claims. Therefore, the Court has no occasion to consider Plaintiff's claims under State law.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendants' motion for summary judgment on Counts I and II. The Court **REMANDS** Counts III through V to the Summit County Court of Common Pleas.

**SO ORDERED.**

Dated: January 24, 2022

*/s/ J. Philip Calabrese*
J. Philip Calabrese
United States District Judge
Northern District of Ohio